1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

11
12
13
14
15
16

DOMINIC MARTINI,

           Plaintiff,

   v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

          Defendant.

Case No.  ED CV 17-00408-RAO

**MEMORANDUM OPINION AND
ORDER**

17
18

**I.    INTRODUCTION**

19
20
21
22

Plaintiff Dominic Martini ("Plaintiff") challenges the Commissioner's denial of his application for a period of disability and disability insurance benefits ("DIB").  For the reasons stated below, the decision of the Commissioner is AFFIRMED.

23

**II.   PROCEEDINGS BELOW**

24
25
26
27
28

On January 16, 2013, Plaintiff filed a Title II application for DIB alleging disability beginning October 20, 2012.  (Administrative Record ("AR") 65-66.)  His application was denied initially on July 2, 2013, and upon reconsideration on January 2, 2014.  (AR 97, 103.)  On February 4, 2014, Plaintiff filed a written

request for hearing, and a hearing was held on September 29, 2015. (AR 32, 109.) Represented by counsel, Plaintiff appeared and testified, along with a medical expert and an impartial vocational expert. (AR 34-64.) On November 13, 2015, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[1] from October 20, 2012 through the date of decision. (AR 26.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-3.) Plaintiff filed this action on March 3, 2017. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff did not engage in substantial gainful activity since October 20, 2012, his alleged onset date ("AOD"). (AR 16.) At **step two**, the ALJ found that Plaintiff has the following severe impairments: obesity; syndactyly of the fingers; essential hypertension; strain/sprain of the left knee and left shoulder; and degenerative disc disease of the cervical spine. (*Id.*) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 18.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform medium work . . . involving sitting 6 hours, standing/walking 6 hours, occasionally lifting 50 pounds, and frequently lifting 25 pounds in an 8-hour workday. He can frequently climb stairs/ramps, but only occasionally climb ladders/ropes/scaffolds. The claimant can occasionally balance and

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

stoop, and frequently kneel, crouch, and crawl. He can frequently use the bilateral upper extremities for gross and fine manipulation.

(*Id.*)

At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff was capable of performing past relevant work as a truck driver. (AR 25.) Accordingly, the ALJ found that Plaintiff had not been under a disability from the AOD through the date of decision, and thus the ALJ did not proceed to **step five**. (AR 26.)

## III.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at

882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.   DISCUSSION

Plaintiff raises the following issues for review:  (1) whether the ALJ properly considered the relevant medical evidence of record and whether the RFC assessment is supported by substantial evidence; and (2) whether the ALJ properly considered Plaintiff's subjective complaints and testimony.  (Joint Stipulation ("JS") 3, Dkt. No. 21.)  Plaintiff contends that the ALJ failed to consider the combination of his impairments, erred in formulating the RFC, and improperly discredited Plaintiff's subjective testimony.  (JS 5, 9, 16-17.)[2]  The Commissioner contends that the ALJ properly considered all evidence and provided multiple permissive reasons to discount Plaintiff's credibility.  (JS 20, 25.)  For the reasons below, the Court agrees with the Commissioner.

### A.   The ALJ's Credibility Determination Is Supported By Substantial Evidence[3]

Plaintiff argues that the ALJ failed to properly consider his subjective statements and failed to provide clear and convincing reasons for rejecting his testimony. (JS 10, 16.)  The Commissioner disagrees.  (*See* JS 25-31.)

///

///

_____

[2] The Joint Stipulation is not consecutively paginated.  For ease of reference, the Court uses the pagination automatically generated by the Court's electronic docket.

[3] Because subjective symptom testimony is one factor that the ALJ must consider when assessing a claimant's RFC, the Court addresses the issue of credibility first before discussing the overall RFC determination.

### 1.    Plaintiff's Testimony

At the administrative hearing, Plaintiff stated that he had completed eleventh grade and pursued automotive studies at a community college.  (AR 37.)  Plaintiff last worked on June 4, 2012 as a construction equipment truck driver.  (AR 38.)  At that job, Plaintiff lifted chains and binders that weighed 20 or 25 pounds.  (*Id.*)  Plaintiff had been a truck driver at various companies since at least 1999.  (AR 39.)

Plaintiff testified that he cannot work due to pain in his hands, which he has had for about 10 years.  (AR 40.)  Plaintiff described feeling "bone on bone" when he touches things.  (*Id.*)  He stated that he has arthritis, bone spurs in his hands and neck, and "[a] lot of pain" in his neck and back.  (*Id.*)

On a zero-to-ten pain scale, Plaintiff assigned a ten to the pain in his right hand.  (*Id.*)  Plaintiff takes gabapentin and duloxetine, which helps his pain level.  (*Id.*)  Plaintiff stated that his pain level is below a ten when he is asleep, but "it always hurts if [he] touch[es] something."  (*Id.*)  Plaintiff then agreed that his pain is a constant ten even with pain medication.  (AR 41.)

Plaintiff assigned a nine to the pain in his left hand, and he stated that the pain goes down to an eight-and-a-half with medication.  (*Id.*)  He explained that the medication "doesn't help much," but he does not have pain as long as he does not move or touch anything.  (*Id.*)  Without medication, Plaintiff has pain, throbbing, and numbness even if he does not move.  (*Id.*)

Plaintiff is seeing a doctor who gives him nerve blockers and cervical epidurals to treat his hand pain.  (AR 45.)  The treatments make his hands numb and take away the pain for two weeks.  (*Id.*)  Plaintiff is right-handed, and he can hold a pen or pencil with two fingers, but not without pain.  (AR 41.)  When using his right hand, Plaintiff cannot write a page, hold items like water glasses, open jars, or fasten buttons, but he can open a doorknob.  (AR 41-42.)  With his left hand, Plaintiff cannot hold a pen or pencil, but he can hold water glasses without a handle by using an open hand.  (AR 42.)  Plaintiff can dress himself if he does not

need to tie shoelaces, he can fasten one button on his pants, and he can operate a zipper. (AR 42-43.)

Plaintiff described occasional difficulty bathing or showering due to problems with his left shoulder. (AR 43.) Plaintiff explained that he injured his left shoulder seven years ago when he fell down a ladder. (*Id.*) He rated the pain in his shoulder as a seven and stated that he cannot raise his left arm to or above his shoulder level without pain. (AR 43-44.) An arthritis doctor gave Plaintiff the option of having surgery on his shoulder, which he declined. (AR 55-56.) Plaintiff also has neck problems from whiplash in a car accident about 10 or 15 years ago, for which he has received chiropractic treatment. (AR 44.) Plaintiff assigned a five to his neck pain and explained that he has difficulty looking up and to the right. (AR 44-45.) Plaintiff stated that medication does not help his shoulder or neck pain. (AR 43-44.)

Plaintiff testified that he has difficulty sitting due to pain in his left knee, which he rated as an eight. (AR 45-46.) Plaintiff has pain "[a]ll the time," and medication does not help. (*Id.*) Plaintiff can sit for 15 minutes before he needs to adjust his leg or lower back through stretching or standing up. (AR 46.) Plaintiff can stand for five minutes before he has knee pain. (AR 46-47.) Plaintiff can walk for 15 minutes. (AR 47.) He wears a brace on his left knee daily, when his left knee gets swollen after walking. (*Id.*) Plaintiff has a cane, but he does not use it because his left hand cannot hold it. (*Id.*) Surgery was suggested after he injured his knee in 1996, but Plaintiff declined it. (AR 56.)

Plaintiff also has hour-long spasms in his lower and middle back every day. (AR 47-48.) When he has a spasm, he needs to "get up and move" and cannot stay in one position. (AR 48.)

Plaintiff does not drive because "[i]t hurts to drive a vehicle." (*Id.*) Plaintiff has other people drive him places; his parents drove him to the hearing. (*Id.*) They did not stop during the drive, which took an hour and forty-five minutes. (*Id.*)

Plaintiff is currently homeless, but he has a temporary room at his parents' house.  (AR 49.)  Plaintiff has lived with his parents since July, but he does not plan to live there indefinitely.  (*Id.*)  He does not do laundry, and his mother does all the cooking.  (AR 49.)  Plaintiff goes grocery shopping "[j]ust for little things, like packages of hot dogs." (*Id.*)

Plaintiff stated that he wakes up in pain two or three times every night, and he does not feel rested in the morning.  (*Id.*)  Plaintiff lies in bed and rests during the day.  (*Id.*)  If Plaintiff stays in bed too long, he wakes up "very stiff," so he doesn't stay in bed more than a half hour.  (*Id.*)

Plaintiff sees a psychiatrist or psychologist once every three months at his primary doctor's recommendation.  (AR 50.)  Plaintiff receives "verbal treatment" and answers the doctor's questions.  (*Id.*)  Plaintiff testified that he is depressed and feels like he needs someone to speak to.  (*Id.*)  Plaintiff cries about once a week. (*Id.*)  Plaintiff denied having friends to socialize with, and he denied going to movies, shows, or other entertainment.  (*Id.*)  Plaintiff also denied belonging to any clubs, social organizations, or religious organizations.  (AR 51.)  Plaintiff does not watch television or do any other activities other than getting up and lying in bed. (AR 52.)

Plaintiff's doctor stopped prescribing medication while Plaintiff tried using medical marijuana for two months.  (AR 51.)  Plaintiff had previously been prescribed Norco and Tramadol.  (AR 54-55.)  Plaintiff stated that the medical marijuana made him "more relaxed" and he "didn't really mind being in pain." (AR 52.)  Plaintiff stopped using medical marijuana about four months before the hearing and has been waiting to get an appointment with another pain specialist. (AR 51.)  Plaintiff stopped using medical marijuana so he could get prescription narcotics.  (AR 55.)

Plaintiff stated that he was still married, but did not know if his wife had filed for divorce.  (AR 52.)  He last saw his wife in June, about three months before the

hearing, after she asked him to leave and they packed up his belongings. (*Id.*)
Plaintiff has one adult child, who he sees occasionally for brief visits. (AR 53.)

## 2. Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id.* The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

## 3. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR 19.) The ALJ relied on the following reasons: (1) activities of daily living; (2) inconsistent statements; and (3) lack of objective medical evidence to support the alleged severity of symptoms. (AR 16-17.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

///

///

8

### a. Reason No. 1: Activities of Daily Living

The ALJ found that Plaintiff's "regular activities contradict several of his reported problems and show he is more capable than he alleged." (AR 20.)

Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991), but a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *accord Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

The fact that Plaintiff fed and walked his dog, took care of his personal care with some difficulty, prepared meals, performed minor chores, shopped, rode a motorcycle, participated in hobbies, and could manage money does not detract from his overall credibility, as the record does not show that this consumed a substantial part of Plaintiff's day. *See Vertigan*, 260 F.3d at 1049-50 (holding that a claimant's ability to "go grocery shopping with assistance, walk approximately an hour in the malls, get together with her friends, play cards, swim, watch television, and read . . . does not in any way detract from her credibility as to her overall disability"). In his Function Report, Plaintiff stated that he spent one hour vacuuming and 20 minutes doing outside work. (AR 195.) He also spent one hour shopping every two weeks. (AR 196.) Further, the ability to perform some tasks is not necessarily indicative of an ability to perform work activities because "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603; *see also Molina*, 674 F.3d at 1112-13 (the ALJ may discredit a claimant who

"participat[es] in everyday activities indicating capacities that are transferable to a work setting"). The critical difference between such activities "and activities in a full-time job are that a person has more flexibility in scheduling the former . . . , can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (cited with approval in *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)). Indeed, Plaintiff stated in his Function Report that his wife helped him care for the pets, and he needed his wife to accompany him places. (AR 194, 197.) Plaintiff also stated that his wife would remind him to take care of his personal needs and grooming. (AR 195.) But by his September 2015 hearing, Plaintiff was no longer living with his wife. (AR 52.)

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### b. Reason No. 2: Inconsistent Statements

The ALJ also found other inconsistencies between the Function Report and Plaintiff's alleged limitations. As part of the credibility determination, the ALJ may consider inconsistencies between the claimant's testimony and his other statements, conduct, and daily activities. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ observed that Plaintiff's "ability to complete a 9-page Function Report in his own handwriting" did not support his allegations of "difficulty using his hands, grasping objects, and performing fine manipulations." (AR 20.) Plaintiff testified that he struggled to hold a pen or pencil and could not write a page. (AR 41.) Although Plaintiff argues that the record does not reveal how long it took Plaintiff to complete his Function Report (JS 12), the ALJ was permitted to consider this discrepancy between Plaintiff's testimony and his demonstrated conduct. *See Light*, 119 F.3d at 792; *see also Ryan*, 528 F.3d at 1198 ("'Where

evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld."). Next, the ALJ noted that Plaintiff reported that he could walk for up to a mile, "despite allegations of knee pain causing difficulty walking." (AR 20; *see* AR 198.) The ALJ also noted that, "contrary to his alleged social limitations," Plaintiff "admitted spending time with his wife, going to the park, and going shopping," and "denied having problems getting along with others and said he got along well with authority figures." (AR 20; *see* AR 198-99.) The ALJ properly considered these discrepancies between Plaintiff's alleged limitations and his self-reported activities. *See Berry v. Astrue*, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (affirming an adverse credibility determination when a claimant's self-reported activities contradicted the claimant's alleged functional limitations).

The Court finds that this reason is a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### c. Reason No. 3: Lack of Supporting Objective Medical Evidence

The ALJ found that "[t]he objective medical evidence fails to provide strong support for the claimant's allegations of disabling symptoms and limitations." (AR 20.) The lack of supporting objective medical evidence cannot form the sole basis for discounting testimony, but it is a factor that the ALJ may consider in making a credibility determination. *Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

Regarding Plaintiff's hand and shoulder impairments, the ALJ noted that medical records confirmed contracture of the fourth and fifth fingers before the AOD. (*Id.*; *see* AR 332, 407.) In June 2012, Plaintiff exhibited discomfort in his third and fourth fingers, reported "a lot of pain in his hands," and wondered how long he could continue his current work. (AR 20, 320-21.) About one month after the AOD, in November 2012, Plaintiff was treated in the emergency room for chronic pain in both hands and left shoulder pain. (AR 20, 288, 290.) In December

2012, Plaintiff was diagnosed with ulnar nerve entrapment at the wrist, which was treated with a wrist splint and medication. (AR 20, 310, 315.) Plaintiff underwent an orthopedic consultation in May 2013, which revealed scarring and joint changes due to syndactyly, some deformities of the PIP and DIP joints, no loss of sensation, normal motor strength bilaterally, normal deep tendon reflexes, normal and painless range of motion in his wrists and elbows, normal pulses, and negative Tinel's sign over the ulnar nerve at the cubital tunnel. (AR 22, 370-71.) Plaintiff's grip strength was measured as 20-40 pounds with his right hand and 20-30 pounds with his left hand. (AR 22, 369.) Plaintiff also had generalized mild tenderness and pain through the range of motion in his left shoulder, but his shoulder was otherwise unremarkable. (AR 22, 370.) X-rays in July 2013 showed deformity of the fourth middle phalanx, flexion deformity of the fourth digit, and mild flexion deformity of the third phalanx on Plaintiff's right hand. (AR 22, 388-89.) Plaintiff also had anchyloses of the fourth PIP joint and severe joint space narrowing of the fourth DIP joint with marginal osteophytosis and flexion deformity in his left hand. (*Id.*) The x-rays of Plaintiff's wrists were unremarkable. (AR 22, 433-34.) Plaintiff was treated at Neighborhood Healthcare beginning in July 2013, where he was treated for chronic pain but was noted to be "in no acute distress." (AR 23; *see, e.g.*, AR 399-409.) In December 2013, Plaintiff complained of chronic pain in his fingers and hand numbness that radiated up both arms. (AR 23, 507-08.) An electrodiagnostic/nerve conduction consultation revealed no evidence of peripheral neuropathy, cervical radiculopathy, or peripheral impingement in the median, ulnar, or radial nerves. (AR 23, 425-26.) Between January 2014 and June 2014, Plaintiff's condition did not significantly change, and he was treated with medication. (AR 23; *see, e.g.*, AR 421-22, 516-17.) In February 2014, Plaintiff was prescribed a Medrol Dosepak; he reported only 15% relief from this medication. (AR 23, 418-20.) No orthopedic source of Plaintiff's problems could be identified, and it was recommended that Plaintiff see a rheumatologist. (AR 23,

418.)  Plaintiff also tried medications for neurologic symptoms and underwent more testing, which was unsuccessful at diagnosing or alleviating Plaintiff's symptoms. (AR 23, 443.)  A February 2014 x-ray of Plaintiff's left shoulder was unremarkable. (AR 23, 517.)  An April 2014 rheumatology consultation revealed slightly limited rotation of the neck, flexion at multiple IPs on prayer sign, poor finger curl, poor grip, multiple deformities and abnormalities of the bilateral fingers, negative Tinel's signs, and wrists that were relatively well preserved and without pain.  (AR 23-24, 539-44.)  Plaintiff's deep tendon reflexes were symmetric and his shoulders were unremarkable.  (*Id.*)  Plaintiff was diagnosed with osteoarthritis and left lateral epicondylitis, which was confirmed in a June 2014 x-ray.  (AR 24, 516, 543.)

Regarding Plaintiff's back impairment, a May 2013 orthopedic evaluation revealed normal range of motion of the cervical spine with pain at the extremes and minimal tenderness of the paracervical muscles.  (AR 369.)  Plaintiff was observed to sit comfortably.  (*Id.*)  Plaintiff began reporting back pain at Neighborhood Healthcare in July 2013, but no significant findings were made.  (AR 23, 403.)  July 2013 x-rays of the cervical spine were normal.  (AR 22, 432.)

Regarding Plaintiff's knee impairment, a May 2013 orthopedic evaluation revealed a normal gait and no limp.  (AR 22, 369.)  In October 2013, Plaintiff reported injuring his left calf; he was provided with a cane and anti-inflammatory medication.  (AR 23, 391, 397-98.)  Plaintiff complained of knee pain during his treatment at Neighborhood Healthcare, but no significant findings were made.  (AR 23; *see, e.g.*, AR 458, 461, 468, 498.)  A February 2014 x-ray of the left knee revealed osteoarthritis.  (AR 23, 518.)

From August 2014 to May 2015, Plaintiff had a positive response to treatment with epidural steroid injections, nerve blocks, and other medications. (AR 24; *see, e.g.*, 547, 555, 559, 571, 629, 632, 635, 647.)

The ALJ thoroughly considered Plaintiff's medical records and found that they did not support Plaintiff's allegations of disabling symptoms and limitations.

13

*See Reddick*, 157 F.3d at 725. The ALJ was permitted to rely on the normal examination results and lack of significant medical findings in assessing the credibility of Plaintiff's testimony. *See Garza v. Astrue*, 380 F. App'x 672, 674 (9th Cir. 2010) (finding that an ALJ properly considered a claimant's normal exam findings when noting a lack of objective medical evidence to support the claimant's allegations).

The Court finds that this is a clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's credibility.

### 4. Conclusion

Because the Court found that one of the ALJ's reasons for discounting Plaintiff's credibility—activities of daily living—is not clear and convincing, the Court must decide whether the ALJ's reliance on that reason was harmless error. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The relevant inquiry "is not whether the ALJ would have made a different decision absent any error," but whether the ALJ's decision is still "legally valid, despite such error." *Id.* The "remaining reasoning *and ultimate credibility determination* [must be] . . . supported by substantial evidence in the record." *Id.* (emphasis in original) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). Here, given the discussion above concerning Plaintiff's inconsistent statements and the lack of supporting objective evidence, the Court concludes the ALJ's credibility finding is legally valid and supported by substantial evidence. *See Garza*, 380 F. App'x at 673 (finding that contradictions created by inconsistent statements and a lack of objective medical evidence constituted substantial evidence to discount credibility, despite finding that the ALJ's other reasons were not clear and convincing).

///

///

///

14

**B.**   **The ALJ Properly Considered the Medical Evidence When Formulating Plaintiff's RFC**

Plaintiff contends that the ALJ failed to properly consider his combination of impairments and erred in assessing Plaintiff's RFC. (*See* JS 5, 9-10.)   The Commissioner contends that the ALJ properly considered all the evidence. (*See* JS 20, 24-25.)

**1.     Applicable Legal Standards**

The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence." 20 CFR § 404.1545(a)(3), 404.1546(c); *see Robbin*s, 466 F.3d at 883 (citing Soc. Sec. Ruling 96-8p (July 2, 1996), 1996 WL 374184, at *5). In doing so, the ALJ may consider any statements provided by medical sources, including statements that are not based on formal medical examinations. *See* 20 CFR § 404.1513(a), 404.1545(a)(3). An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *accord Morgan*, 169 F.3d at 599.

Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). Most often, the opinion of a treating physician is given greater weight than the opinion of a non-treating physician, and the opinion of an examining physician is given greater weight than the opinion of a non-examining physician. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The ALJ must provide "clear and convincing" reasons to reject the ultimate conclusions of a treating or examining physician. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Lester*, 81 F.3d at 830-31. When a treating or examining physician's opinion is contradicted by another opinion, the ALJ may reject it only

15

by providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830; *Carmickle*, 533 F.3d at 1164. A non-examining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record and is consistent with it. *Morgan*, 169 F.3d at 600. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted).

Other non-medical sources may also provide opinions and testimony regarding a claimant's symptoms or the effects of a claimant's impairments on his or her ability to work. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). The ALJ must take this evidence into account, unless the ALJ "expressly determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'" *Nguyen*, 100 F.3d at 1467 (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)); *see Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Because such testimony is competent evidence, it "*cannot* be disregarded without comment." *Nguyen*, 100 F.3d at 1467 (emphasis in original).

## 2. Opinion Testimony

Treating physician Thomas E. Rastle, M.D., completed Mental and Physical Medical Source Statements in March 2013. (AR 20, 356-63.) Dr. Rastle treated Plaintiff occasionally over the course of five years. (AR 356, 361.) In his Mental Medical Source Statement, Dr. Rastle indicated that Plaintiff had no psychiatric condition. (AR 356, 359.) He noted that Plaintiff's prognosis was "entirely dependent on hands condition," and Plaintiff suffered from decreased energy and sleep disturbance. (AR 356-57.) Dr. Rastle indicated that Plaintiff had "unlimited or very good" abilities to perform unskilled work, semiskilled and skilled work, and particular types of jobs. (AR 358-59.) Dr. Rastle also noted that Plaintiff's

psychological condition would not cause him to be absent from work and that his only impairments were physical. (AR 360.) In his Physical Medical Source Statement, Dr. Rastle diagnosed Plaintiff with hand pain secondary to arthritis after hand surgeries for a congenital condition. (AR 361.) Dr. Rastle stated that Plaintiff had a fair-to-poor prognosis, noting Plaintiff's severe, constant finger pain and deformities. (AR 361.) Dr. Rastle indicated that Plaintiff required a cane or other assistive device for occasional standing or walking. (AR 361.) Dr. Rastle opined that Plaintiff could stand or walk for six hours of an eight-hour workday, sit for eight hours, never lift or carry any weight, and rarely perform postural activities. (AR 362.) He also stated that Plaintiff had significant limitations with reaching, handling, or fingering. (*Id.*) Dr. Rastle determined that Plaintiff could never grasp, turn, or twist objects; could perform fine manipulations 1% of a working day; could never reach with his left arm; and could reach with his right arm only 5% of a working day. (*Id.*) Dr. Rastle noted that Plaintiff's symptoms would constantly interfere with attention and concentration needed to perform simple work tasks. (AR 363.) Dr. Rastle also indicated that Plaintiff could tolerate moderate work stress and would likely be absent from work more than four days per month. (*Id.*)

Alan Berkowitz, M.D., performed a psychiatric evaluation in April 2013. (AR 21, 364-67.) Dr. Berkowitz noted that Plaintiff was given medication for anxiety, but Plaintiff did not believe that anxiety made him unable to function in the workplace. (AR 364; *see* AR 365.) Dr. Berkowitz observed that Plaintiff was polite and engaging, put forth a good effort, had normal and well-organized speech, made good eye contact, and was completely oriented. (AR 365.) Dr. Berkowitz noted that Plaintiff had normal memory, intact judgment, and well-organized thought processes. (AR 365-66.) Plaintiff reported doing light housework, shopping with his wife, doing laundry and some simple cooking, reading books daily, paying bills, and light computer use. (AR 366.) Dr. Berkowitz determined that Plaintiff had no mental functional limitations. (AR 366-67.) During this

examination, Plaintiff was also assigned a Global Assessment of Functioning ("GAF") score of 65. (AR 366.)

Thomas Sabourin, M.D., completed a comprehensive orthopedic evaluation in May 2013. (AR 22, 368-74.) In his medical source statement, Dr. Sabourin determined that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently, stand and walk for six hours of an eight-hour workday, sit for six hours of an eight-hour workday, and push and pull 50 pounds occasionally and 25 pounds frequently. (AR 371.) Dr. Sabourin found that Plaintiff has no postural limitations and can do gross and fine manipulation only frequently. (*Id.*)

Dr. Lorber, a Board Certified Orthopedic Surgeon, reviewed the evidence of record and served as a medical expert during Plaintiff's hearing. (AR 24, 32-64.) Dr. Lorber identified obesity and congenital syndactyly with post-surgical deformities as medically determinable impairments. (AR 57.) Dr. Lorber also considered Plaintiff's allegations of cervical spine fracture and left knee injury, but he did not find any diagnostic findings to support that they were medically determinable impairments. (AR 58.) Dr. Lorber did not find that Plaintiff's impairments, singly or in combination, met or equaled any listed impairments. (AR 57-59.) Dr. Lorber determined that Plaintiff had the capacity to occasionally lift 50 pounds and frequently lift 25 pounds. (AR 59.) Dr. Lorber found no restrictions on standing or walking and limited Plaintiff to frequent manipulation with his hands. (*Id.*)

State agency medical consultants reviewed Plaintiff's records initially and upon reconsideration. (AR 24, 66-77, 79-94.) The consultants determined that Plaintiff could perform light work, stand or walk for six hours, sit for six hours, frequently perform postural activities, and frequently perform gross and fine manipulations. (AR 74-75, 90-92.)

State agency psychological consultants also reviewed Plaintiff's records and found that Plaintiff had no severe mental impairments. (AR 24, 66-77, 79-94.)

Plaintiff's wife, Silvia Martini, completed a Third Party Function Report in March 2013. (AR 24-25, 208-16.) Mrs. Martini reported that Plaintiff had pain in his hands and difficulty lifting, squatting, reaching, walking, kneeling, using his hands, and getting along with others. (AR 208, 211, 213.) She noted that Plaintiff watched TV, read, did light chores at home, made his bed, cared for the dog, prepared his own meals, vacuumed, used a leaf blower, went outside three or four times a week, and could manage money. (AR 209-11.) Mrs. Martini also reported that Plaintiff got along "very well" with others, handled stress well, and handled changes in routine very well. (AR 214.)

### 3. Discussion

In determining Plaintiff's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . [and] also considered opinion evidence" in accordance with social security regulations. (AR 18.)

The ALJ assigned Dr. Rastle's opinions "little weight." (AR 21.) The ALJ noted that Dr. Rastle "offered no rationale, diagnostic findings, or no clinical notations for the restrictions." (*Id.*) The ALJ also noted that Dr. Rastle's opinions were inconsistent between his Mental Medical Source Statement and his Physical Medical Source Statement. (*Id.*) The ALJ observed that Plaintiff's reported use of his hands was significantly more than Dr. Rastle's reported 1% to 5% of a workday. (*Id.*) Accordingly, the ALJ found Dr. Rastle's opinion to be unreliable. (*Id.*) The Court finds that the ALJ provided specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Rastle's opinion. *See Magallanes*, 881 F.2d at 751 (an ALJ may disregard a treating physician's opinion that is brief, conclusory, and lacks clinical findings); *Morgan*, 169 F.3d at 603 (the ALJ is responsible for resolving internal inconsistencies in medical reports and determining whether these inconsistencies are relevant to discrediting medical opinions).

The ALJ assigned Dr. Berkowitz's opinion "great weight," finding it consistent with clinical findings and Plaintiff's reports of "mild" symptoms. (AR 21.) However, the ALJ assigned the GAF score from Dr. Berkowitz's assessment "little weight." (AR 22.) The ALJ noted that GAF scores vary widely, are not standardized or based on normative data, and offer "only a snapshot opinion" about the level of functioning. (*Id.*) The ALJ also explained that GAF scores are used by treating clinicians to plan and measure the impact of treatment, and they do not measure the ability to meet the mental demands of unskilled work. (*Id.*) Accordingly, the ALJ properly found that the GAF score is not an appropriate measure of Plaintiff's functional abilities. *See Chavez v. Astrue*, 699 F. Supp. 2d 1125, 1135 (C.D. Cal. 2009) (finding that the unreliability of GAF scores is a specific and legitimate reason to reject the scores); *Taylor v. Astrue*, No. EDCV 08-1708-OP, 2009 WL 4349553, at *3 (C.D. Cal. Nov. 24, 2009) (same).

The ALJ assigned Dr. Sabourin's opinion "partial weight," noting that his assessments of lifting or carrying only 10 to 20 pounds was not consistent with both the clinical findings and his determination that Plaintiff could push and pull at a medium level. (AR 22.) The ALJ also found the lack of postural limitations to be inconsistent with Plaintiff's obesity. (*Id.*) The ALJ properly rejected these inconsistent conclusions. *See Tommasetti*, 533 F.3d at 1041 (rejecting opinion testimony that was inconsistent with medical records). The ALJ also gave "great weight" to Dr. Sabourin's opinions about Plaintiff's ability to manipulate, finding them consistent with Plaintiff's chronic hand pain and continued use of his hands on a daily basis. (AR 22.) The ALJ also found that Dr. Sabourin's recommendations about standing, walking, and sitting were consistent with his findings of normal ambulation and no apparent discomfort while seated. (*Id.*)

The ALJ assigned "partial weight" to the opinions of Dr. Lorber and the state agency medical consultants, noting that they did not have an opportunity to review all of the evidence. (AR 24.) The ALJ noted that recent records show additional

impairments but a positive response to treatment; accordingly, the opinions were "not a fair assessment of the claimant's functional limitations." (*Id.*) Because these non-examining doctors' opinions did not take into account the full record, the ALJ properly discounted their weight. *See Herron v. Astrue*, 407 F. App'x 139, 141 (9th Cir. 2010) (rejecting an ALJ's assignment of "great weight" to the opinion of a state agency consultant who did not review a substantial portion of the relevant medical evidence).

The ALJ properly assigned "great weight" to the opinions of the state agency psychological consultants, finding the opinions to be consistent with the medical evidence. (AR 24.) *See Morgan*, 169 F.3d at 600 ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.").

The ALJ assigned Mrs. Martini's opinion "little weight," noting that she is not a medical expert, her statements are inconsistent with the activities that she acknowledged that Plaintiff could do, and her opinions are inconsistent with the objective medical evidence. (AR 25.) These are germane reasons to support discounting her lay opinion. *See, e.g.*, *Lewis*, 236 F.3d at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").

Plaintiff also argues that the ALJ improperly considered the combination of impairments that affect and limit Plaintiff's use of his hands and fingers. (JS 5.) The ALJ found that Plaintiff's tendonitis, chronic hand pain, diabetes mellitus, arthritis, degenerative joint disease, and tensor fascia lata syndrome were redundant or non-severe conditions. (AR 17.) The ALJ noted that these conditions "were either alternatively diagnosed, managed medically, resolved, or amenable to proper control" through treatment. (*Id.*) The ALJ also noted that no aggressive treatment was recommended or anticipated, and several conditions presented only slight abnormalities with no more than a minimal effect on Plaintiff's abilities. (*Id.*)

Plaintiff relies on Dr. Rastle's medical source statement and his finding of "substantial limitations" on Plaintiff's abilities, as well as Dr. Sabourin's opinion about Plaintiff's functional abilities. (JS 6-9.) But as discussed above, the ALJ properly gave Dr. Rastle's opinions little weight and properly rejected Dr. Sabourin's opinion that Plaintiff was limited to lifting and carrying 10 to 20 pounds. *See Batson*, 359 F.3d at 1197 ("The ALJ was not required to incorporate evidence from the opinions of [the claimant]'s treating physicians, which were permissibly discounted."). Finally, Plaintiff notes that he "has consistently maintained throughout this claims process that he is significantly limited in his ability to use his upper extremities for activities such as gripping, gross manipulation, and fine manipulation." (JS 5.) Plaintiff also notes medical records that document his reports of pain. (JS 5-6.) However, the ALJ properly found that Plaintiff's allegations were "not entirely credible" (AR 19), and the ALJ was permitted to disregard Plaintiff's subjective complaints in making his findings. *See Stenberg v. Comm'r Soc. Sec. Admin.*, 303 F. App'x 550, 552 (9th Cir. 2008) (after an ALJ found a claimant not credible, "he was not required to include limitations that she claimed in reliance solely on her subjective reports of pain"). The ALJ properly considered the objective medical evidence and determined that these conditions were non-severe. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005-06 (9th Cir. 2005) (ALJ committed no legal error in finding no impairment because, "[r]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings . . . ." (quoting Social Security Ruling 96-4p, 1996 WL 374187, at *1-2)).

The ALJ concluded that Plaintiff has multiple severe physical impairments that would limit Plaintiff to a reduced range of medium work, as stated in the RFC. (AR 25.) The ALJ noted that multiple exams mentioned only Plaintiff's upper

extremities, and references to his cervical spine and left knee are intermittent. (*Id.*) The ALJ noted that the record does not indicate the need for any limitations for Plaintiff's obesity or mental impairments. (*Id.*) The ALJ therefore found that there was support for limitations based on Plaintiff's physical impairments, but no support for any severe mental impairment. (*Id.*)

In sum, the Court finds that the ALJ's RFC assessment is supported by substantial evidence. *See Arrieta v. Astrue*, 301 F. App'x 713, 715 (9th Cir. 2008) (finding that substantial evidence supported the RFC determination when the ALJ properly evaluated the opinion evidence and relied on supporting medical reports and testimony).

## V.   <u>CONCLUSION</u>

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:  January 29, 2018    _____
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE


**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**